FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2008 MAY 15 A 11: 34
R. aok
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

LAMONT PERRY,

  Plaintiff,

vs.

UNITED STATES OF AMERICA;
JOSE M. VAZQUEZ, Warden;
Associate Warden EDDIE CLINTON
JACOBSEN; Dr. MARTHA CHIPPI;
FRANK ADAIR, Physician's Assistant;
JEFF COUGHLIN, former Hospital
Administrator, and DEBORAH
FORSYTH, Associate Warden,

  Defendants.

CIVIL ACTION NO.: CV207-065

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff has filed an action pursuant to 28 U.S.C. § 1331, <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* On October 22, 2007, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which the Court construes as a Motion for Summary Judgment.[1] Plaintiff has filed a Response, and Defendants have filed a Reply. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

---

[1] If "matters outside the pleading are presented to and not excluded by the court", the "motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b).

Plaintiff contends that while incarcerated at the Federal Correctional Institute in Jesup, Georgia ("FCI Jesup"), he suffered a shoulder injury and requested medical treatment. Plaintiff asserts that his treatment was delayed some fourteen months, resulting in his developing arthritis. Plaintiff further asserts that he was denied the appropriate treatment by prison officials because of his race. Plaintiff's Complaint was ordered served on Defendants based upon Bivens claims of Eighth Amendment deliberate indifference and Equal Protection violations, and an additional claim under the FTCA. In their Motion, Defendants contend that: (1) the individual Bivens Defendants may not be liable solely upon a theory of respondeat superior; (2) Plaintiff's Eighth Amendment claim fails on the merits; (3) Plaintiff's Equal Protection claim fails on the merits; (4) they are entitled to qualified immunity; and (5) the United States is not liable under the FTCA.

## STANDARD OF DETERMINATION

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The procedure for disposing of a summary judgment motion is well established. The Court may grant summary judgment to a party when the evidence demonstrates that the nonmoving party has failed to establish an essential element of his case. The party moving for summary judgment bears the initial burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). In applying this standard, a court should view the evidence and all factual inferences in the light most favorable to the party opposing the

motion. All reasonable doubts regarding the facts should be resolved in favor of the nonmovant. Adickes, 398 U.S. at 157, 90 S. Ct. at 1608.

Once the moving party has met this initial burden, the burden shifts to the opposing party to show that a genuine issue of material fact exists. Celotex Corp. v. Catrell, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The opposing party may not simply rest upon mere allegations or denials of the pleadings. Rather, the nonmoving party must make a sufficient showing of facts to establish the existence of an essential element to his case on which he will bear the burden of proof at trial. Id.; Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989). To oppose the motion sufficiently after the movant has met his initial burden, the nonmoving party must point to evidence in the record or present additional evidence in the form of affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. Riley v. Newton, 94 F.3d 632, 639 (11th Cir. 1996). If the record presents factual issues, the Court must deny the motion and proceed to trial. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999). Summary judgment is also inappropriate where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. Id.

## DISCUSSION AND CITATION OF AUTHORITY

**I.    Supervisory Liability**

In cases such as this, it is well established in the Eleventh Circuit that liability must be based on something more than a theory of respondeat superior. Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only where there is personal participation in the alleged constitutional

violation or where there is a causal connection between the supervisor's conduct and the alleged constitutional violations. Id. at 802. "A causal connection may be established when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully and failed to stop them from doing so." Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)).[2]

Defendants contend that they were not personally involved in the alleged constitutional violations and thus cannot be held liable. Defendants assert that, because Plaintiff has failed to even allege any affirmative causal connection between their action or inaction and the alleged constitutional deprivations, his claims against them must be dismissed.

Plaintiff has alleged that he repeatedly voiced his medical complaints to Defendants Vazquez, Chippi, Jacobsen, Coughlin, Forsyth, and Taylor but was regularly ignored. Plaintiff further asserted that Adair, Forsyth, and Taylor, were responsible for determining priority in the dispensing of medical treatment. (Doc. No. 1, p. 2). Plaintiff has alleged enough to state a cognizable claim against the named Defendants. This is particularly true in light of the longstanding principle that *pro se* pleadings are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652, 654 (1972).

---

[2] Although these are section 1983 cases, the same standards apply to Plaintiff's Bivens claims. See Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (applying § 1983 supervisory liability case law to Bivens claims).

## II. Eighth Amendment Claim

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. The Supreme Court has held that a prison official's "deliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). However, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105, 97 S. Ct. at 291). Rather, "[a] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994) (internal punctuation and citation omitted). A mere difference in medical opinion between medical personnel and the inmate as to the diagnosis or course of treatment is insufficient to support an Eighth Amendment claim. Harris, 941 F.2d at 1505.

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health or safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327 (internal punctuation and citation omitted). It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. Harris, 941 F.2d at 1505.

As the Eleventh Circuit has detailed:

> an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate. Alternatively, even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. For example, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference.

Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003) (internal punctuation and citations omitted).

Plaintiff's medical records, submitted by both parties, are for the most part not helpful in determining any sequence of events or treatment provided. What can be deciphered by the Court establishes that on March 21, 2005, Plaintiff presented at medical with right shoulder pain as a result of a basketball injury. (Gov. Exh. 2; Gov. Exh. 23). He was prescribed Indocin for pain. (Id.). He underwent an x-ray, which

AO 72A
(Rev. 8/82)

6

showed "no evidence of recent fracture or other significant bony abnormality." (Gov. Exh. 3; Gov. Exh. 23). He was then seen by the prison orthopedist, who found a rotator cuff strain with a small tear and recommended "no activity that causes pain after 6 weeks slowly progress activity" and that he be seen again if he did not improve. (Gov. Exh. 4; Gov. Exh. 23). The records following this date are largely illegible. In December 2005, a note in Plaintiff's record indicates that he "was seen for ortho today by Dr. Hein. Imp rotator cuff impingement A.C. arthritis. Rec Mumford procedure (distal claviculectomy) acromioplasty and rotator cuff exploration with possible repair." (Gov. Exh. 7). Surgery was performed on June 15, 2006 at Wayne Memorial Hospital. (Gov. Exh. 11; Gov. Exh. 23). The hospital's diagnosis reflected both the rotator cuff tear and arthritis in the shoulder. (Gov. Exh. 12).

Defendant Chipi, acting Clinical Director during the relevant period, provided a Declaration in support of Defendants' position that she provided adequate medical care to Plaintiff. Chipi asserts that following Plaintiff's shoulder injury, he did not require urgent surgical intervention. (Gov. Exh. 30, ¶ 3). Chippi states that "[t]here are always some risks associated with a surgery, and until conservative treatment proves to be insufficient to accommodate an injury which permits time to try it, surgery is an option that we are reluctant to implement." (Id.). Chipi avers that once surgery was recommended by the physician, it was not recommended with any urgency. (Id.).

Defendants also submit the declaration of Betzy Hernandez-Ricoff, M.D., Regional Director for the Southeast Region of the BOP. (Gov. Exh. 29). Hernandez opined that, initially, surgery was not recommended for Plaintiff's injury, as "surgical intervention is ordinarily not the treatment of choice for rotator cuff injuries, and it would

AO 72A
(Rev. 8/82)

rarely be needed on an urgent basis." (Id. at ¶ 3). She stated that the orthopedic surgeon who eventually recommended surgery indicated no urgency and that indeed, Plaintiff "did not meet the criteria for urgent surgical intervention." (Id. at ¶ 5). Hernandez explained that:

> [u]rgent surgical intervention for rotator cuff injuries is only indicated in cases where there is neurovascular involvement (which there is no indication inmate Perry had), where the patient is [a] competitive athlete (such as a professional basketball player), a full thickness tear or severe functional deficit (neither of which inmate Perry exhibited).

(Id.).

In support of his position to the contrary – namely that he should have been given immediate surgery and that the delay caused him substantial harm – Plaintiff has offered no evidence creating a genuine issue of material fact. Plaintiff has failed to offer evidence establishing either the objective or subjective elements of his Eighth Amendment claim. The evidence indicates that Plaintiff did, in fact, receive medical care, and though he may have been and evidently was displeased with the level of care or the quickness with which he was operated on, that is not enough to establish deliberate indifference. The records from the consultative surgeon, Dr. Hein, do not indicate Plaintiff was in need of surgery on an emergency or urgent basis.

Furthermore, the seriousness of an inmate's medical needs, where he alleges delayed treatment, may be decided by reference to the *effect* of the delay in treatment. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). Plaintiff simply must submit some verifying evidence to establish that the delay in treatment had a detrimental effect. Plaintiff alleges that he suffered arthritic changes *because* of the delay, but there is no medical evidence to support this claim. In fact, Hernandez-Ricoff

notes that "[p]ost-traumatic arthritic changes are the common consequence of any joint injury (including surgical interventions)." (Gov. Exh. 29, ¶ 4 n.1). Plaintiff's claim ultimately amounts to an assertion that he did not receive the medical attention and treatment he deemed appropriate, a claim that is insufficient as a matter of law to sustain a cause of action based on deliberate indifference. See Harris, 941 F.2d at 1505. Plaintiff had surgery on his shoulder after conservative treatment with rest and medication did not succeed, and after a consultation with an orthopedic specialist. In short, Plaintiff has not met his burden of establishing the existence of a genuine issue of material fact as to whether Defendants were deliberately indifferent to his serious medical needs. Accordingly, Defendants are entitled to summary judgment on the Eighth Amendment claims.

### III. Equal Protection

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order to prove an Equal Protection claim, it must be established: (1) that the inmate is similarly situated with other inmates who received more favorable treatment; and (2) that the discriminatory treatment was based on some constitutionally protected interest such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001). Official action will not be held unconstitutional solely because it results in a disproportionate impact. Instead, proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in

AO 72A
(Rev. 8/82)

9

spite of,' its adverse effects upon an identifiable group." Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979).

In response to Defendants' summary judgment motion, Plaintiff bears the burden of producing some evidence to show that Defendants took action based upon intentional discrimination. Plaintiff must show that he was treated differently from other inmates who were similarly situated, *and* that Defendants acted with the intent to discriminate against him. E&T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Purposeful discrimination can be shown either by direct evidence, i.e., admissions of the defendant, or indirectly by way of substantially probative circumstantial evidence. Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265-266. However, conclusory allegations or assertions of personal belief of disparate treatment of discriminatory intent are insufficient. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998).

Plaintiff contends that his surgery was delayed while other similarly situated inmates were given surgery more quickly because they were white and he is black. Specifically, Plaintiff alleges that Michah Rudisill, a white inmate, suffered a shoulder injury, and was treated with surgery within nine days, while he, a black inmate, was forced to wait many months for surgical treatment of his shoulder injury. (Doc. No. 1, pp. 3-4).

In support of their position, Defendants submit the Declaration of Dr. Chipi, who explains that Inmate Rudisill suffered a ruptured tendon in his right bicep, an injury which "calls for prompt surgical intervention, because if surgery is not performed promptly, the tendon may retract, making future repair much more difficult." (Gov. Exh.

AO 72A
(Rev. 8/82)

30, ¶ 4). Chipi noted that the prison's orthopedic consultant recommended that the tendon be repaired soon. (Id.). Chipi concludes that "[t]he other inmate had surgery more quickly than inmate Perry because his specific medical condition called for a prompt surgery, whereas inmate Perry's specific condition did not." (Id. at ¶ 5).

Plaintiff has failed to put forth any evidence that Defendants applied medical care in an unequal fashion based on race. Although Plaintiff has identified another prisoner in an effort to demonstrate that he has been treated differently, this evidence is insufficient to establish that the individual was similarly situated, much less that the decision to treat Plaintiff's injury in a particular way was based on an impermissible factor. Plaintiff also points to his claim that "all non-white inmates were placed on call outs, to address their concerns regarding the lack of disparate treatment," but even if that is true it does not establish that Plaintiff was treated more slowly or received a different prognosis or recommended course of treatment because of his race. At most, Plaintiff has shown a simple disparity of treatment, which is insufficient to establish discrimination. Plaintiff alleges that Defendants delayed his treatment because he is black, and the evidence presented, what little there is, does not countenance an inference of discriminatory intent. In light of the foregoing, summary judgment is due to be granted in favor of Defendants on this claim.

## IV. FTCA Claim

The FTCA allows the United States to be sued in the same manner as a private individual. 28 U.S.C. § 2674. The purpose of the FTCA is to "'provide redress for ordinary torts recognized by state law.'" Stone v. United States, 373 F.3d 1129, 1130 (11th Cir. 2004) (quoting Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir.

2001)). The FTCA is a limited waiver of sovereign immunity rendering the federal government liable to the same extent as a private party. United States v. Orleans, 425 U.S. 807, 813, 96 S. Ct. 1971, 1975, 48 L. Ed. 2d 390 (1976).

The substantive law of the state in which the allegedly negligent act or omission occurred governs in an action brought under the FTCA. 28 U.S.C. § 1346(b)(1); Stone, 373 F.3d at 1130. Accordingly, the Court will apply the law of the state of Georgia to Plaintiff's FTCA claims. To establish medical malpractice liability under Georgia law, the plaintiff must establish "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." Zwiren v. Thompson, 578 S.E.2d 862, 864 (Ga. 2003). The "standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally." Kenney v. Piedmont Hosp., 222 S.E.2d 162, 167 (Ga. 1975). In this state, the law recognizes a presumption that the medical care was performed in an ordinarily skillful manner. Shea v. Phillips, 98 S.E.2d 552, 554 (Ga. 1957). Finally, the plaintiff must use expert testimony to establish proximate cause, Zwiren, 578 S.E.2d at 865, and "may not rely on his own statements and lay opinions to avoid summary judgment." Suggs v. United States, 199 Fed. Appx. 804, 808 (11th Cir. 2006).

Accordingly, in order to establish Defendant's liability, Plaintiff must establish by expert medical evidence that the FCI Jesup medical staff's treatment, or lack thereof, of his condition violated the duty of care ordinarily owed by doctors to their patients, and that the violation proximately caused his injuries. In order to survive summary judgment, Plaintiff must provide expert testimony to meet his burden. Plaintiff has

AO 72A
(Rev. 8/82)

provided no expert testimony on the standard of care and its violation, nor has he pointed to any such testimony he has hopes of obtaining. The undisputed evidence offered by Defendant establishes that Plaintiff was provided medical care at FCI Jesup that fell within the appropriate standard of care. See Gov. Exh. 29; Gov. Exh. 30. Plaintiff offers nothing to the contrary. Accordingly the United States is entitled to summary judgment on the FTCA claim.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**.

So **REPORTED** and **RECOMMENDED** this __15th__ day of May, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE